IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARGARET LECHNER,

                Plaintiff,            OPINION AND ORDER

v.

                                      21-cv-76-wmc

MARTIN O'MALLEY, Commissioner
of Social Security,[1]

                Defendant.

---

*Pro se* plaintiff Margaret Lechner seeks judicial review of a final decision denying her claim for disability benefits under the Social Security Act. 42 U.S.C. § 405(g). Although the court previously denied plaintiff's motion for a "Sentence Six Remand" for consideration of various medical records, finding that the evidence she sought to admit was not new or material or could have been produced before the ALJ, plaintiff was given an opportunity to submit a full brief in support of her appeal. (Dkt. #29.) In response, plaintiff has submitted a brief claiming that remand is warranted because Administrative Law Judge Dean Syrjanen ("ALJ") failed to obtain a proper waiver of counsel from her, consider evidence favorable to her claim, consider the combined impact of her physical and mental impairments, and develop the record in several other respects. (Dkt. #48.) Plaintiff also filed a separate motion requesting that medical records dating from December 2019 to November 2021 be added to the record. (Dkt. #49.)

Because the court finds that the ALJ obtained a proper waiver of counsel, and there is substantial evidence in the record supporting the ALJ's findings, and he lays out a logical bridge

---

[1] The court has updated the caption to reflect that Martin O'Malley became the head of the Social Security Administration on December 20, 2023.

from those facts and his conclusions with respect to plaintiff's impairments, the court will affirm the Commissioner's decision and dismiss plaintiff's appeal. As for plaintiff's motion to supplement the record, it, too, must be denied because the court already considered and rejected the admission of the 2019 to 2021 records as immaterial, having post-dated the ALJ's 2019 denial and not discussing plaintiff's past medical history.

BACKGROUND

In its previous order, the court set forth an overview of the case and discussed the basis for the ALJ's decision, both of which it relies upon again here. (Dkt. #29.) The court will draw additional facts from the administrative record available at dkt. #17 ("AR"), as relevant to the analysis below.

OPINION

To establish disability, a claimant must demonstrate that she had a medically determinable physical or mental impairment expected to last at least twelve months which made her unable to engage in substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), (2)(A). In assessing disability, the Commissioner conducts a five-step inquiry including determinations as to: (1) whether the claimant is performing substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her residual functional capacity assessment; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at every step except the fifth,

*Wilder v. Kijakazi*, 22 F.4th 664, 651 (7th Cir. 2022), and must produce objective medical evidence to corroborate her allegations of disabling symptoms. *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

The question before this court on appeal is whether the ALJ's decision is supported by "sufficient evidence to support the agency's factual determinations" or only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In applying this standard, reviewing courts may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi,* 25 F.4th 470, 473 (7th Cir. 2022). "Rather, this court asks whether the ALJ's decision 'reflects an adequate logical bridge from the evidence to the conclusions.'" *Id.* (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).

In addition to giving her no choice but to represent herself, plaintiff Lechner challenges the ALJ for: (1) not adequately considering evidence related to the severity and combined impact of her physical and mental impairments; (2) dismissing the opinion of her former treating physician, Dr. Cynthia Cernak, in favor of the opinions of the state agency consultants; and (3) failing to develop the record adequately by declining to call her husband to testify on her behalf, requesting an independent medical exam, recontacting her physicians, or posing hypothetical questions to the vocational expert. Even construing all the evidence and inferences generously, however, none of these arguments are enough to require a remand.

3

I.       Representation

As an initial matter, plaintiff has a statutory right to counsel for SSA administrative proceedings, *see* 42 U.S.C. § 406, but that right can be waived once advised of: "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). "[S]o long as it contains the required information, written notice adequately apprises a claimant of h[er] right to counsel." *Id.* at 497.

Here, plaintiff asserts that she was not properly apprised of her rights because the ALJ made her decide on the spot whether she would be representing herself at the outset of her hearing. She further explains her decision by the fact that no one wanted to take on her case, and her husband could not act as her representative because as a potential witness, he could not be present during the hearing. *Before* the hearing, however, the SSA had already sent plaintiff a letter that discussed her right to representation and *twice* provided her with a pamphlet providing information on the potential benefits of representation, choosing a representative, and the limits on representative fees. (AR 121-22, 125-28, 139, 141-42.) The agency also repeatedly notified plaintiff before the hearing that if she wanted an appointed representative, she needed to inform the agency of that fact in writing. (AR 117, 122, 125, and 141.) Finally, there is *no* indication in the record, and plaintiff does not argue, that she requested in writing that her husband serve as her representative.

Moreover, the ALJ explained to plaintiff at the hearing that she had the right to be represented by an attorney or non-attorney, or represent herself. (AR 66-67.) Because

plaintiff's only response was that no one wanted to take on her case, the ALJ then had her sign a written waiver, which contrary to plaintiff's assertion now, also properly informed her of the right to be represented by an attorney or non-attorney at the hearing and asks whether she wished to waive that right. (AR 67, 156.) Since her signature indicates that she did just that, the court finds that plaintiff was adequately advised of her statutory right to counsel *and* knowingly waived her right to representation by an attorney or non-attorney before choosing to represent herself at the hearing.

## II.    Severity of Impairments

Plaintiff next contends that she has been disabled since March 13, 2012, because of numerous impairments, including anxiety, depression, asthma, and a permanent partial disability ("PPD") of 30% to 40% in her right foot resulting from a motor vehicle accident in 1994. (AR 52, 55.)    However, the ALJ found that none of these impairments, either individually or in combination, qualified as a severe impairment or met or medically equaled a listed impairment. (AR 54-57.) Specifically, he explained that no medical record or opinion evidence in the record support a finding that plaintiff's asthma, right ankle injury, and anxiety significantly limited her work-related activities for a minimum of 12 consecutive months from her alleged onset date through December 31, 2014, the date that she was last insured.[2]  *Id*. The ALJ further noted that the findings of state-agency medical consultants -- Mina Khorshidi,

---

[2] Plaintiff did not apply for supplemental security income and is only entitled to disability insurance benefits if she was "under a disability" by the date her insured status expired. 20 C.F.R. §§ 404.131(a) and 404.320(b)(2); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

5

M.D., Marcia Lipski, M.D., Deborah Pape, Ph.D., and Lisa Fitzpatrick, Psy.D. -- all supported a finding that plaintiff did not have a severe impairment. (AR 58, 96-98, 106-08.)

With respect to the ALJ's handling of the evidence, plaintiff broadly argues that he did not give adequate consideration to the fact that she suffers from daily, chronic pain due to floating bone chips in her right foot, acute asthma symptoms triggered by pollutants and viruses outside her control, low thyroid levels from her Symbicort asthma medication, and leg muscle and joint pain caused by her thyroid medication and arthritis. Plaintiff also references generally portions of the administrative record in support of her argument, but with the exception of her asthma and a general list of plaintiff's past diagnoses, the records she cites discuss medical problems and tests occurring more than a year after her last insured date. *See* dkt. #36 at 27-28 (citing AR 871-911); *but see* AR 878 (2014 clinical note of worsening wheezing and dyspnea that wake plaintiff twice each night and required emergency room treatment; suspected precipitants include viral infections). In fact, plaintiff fails to cite any evidence in these records indicating specific, functional limitations caused by her medical problems before her last insured date. *See Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017) ("[I]n our review of the [ALJ's] decision, we consider only its finding that he was not disabled as of his date last insured, not Schloesser's argument on appeal that he is currently disabled."). Finally, the ALJ adequately considered plaintiff's arguments regarding some of her specific conditions, as set forth below.

### A. Right Foot Injury

With respect to her right foot, plaintiff cites a 1996 opinion of her treating podiatrist, Dr. Cynthia Cernak, finding that plaintiff was 30 to 35 percent disabled. (AR 821-22.)

However, the ALJ adequately explained reasons for finding that opinion unpersuasive. First, Dr. Cernak provided it more than 15 years before the relevant period and in the context of a 1995 injury to plaintiff's right foot. Second, plaintiff regained full functional capacity after her accident and returned to significant work activity for many years. (AR 55-56 (citing AR 168-74).) Indeed, a claimant who engages in substantial gainful work activity is considered *not* disabled while doing so. *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

Although plaintiff argues that the ALJ missed the fact that her foot impairment continues to cause her chronic pain, he actually addressed plaintiff's reports and testimony in this area, finding her self-reported symptoms not entirely consistent with the medical evidence, again based on her physical condition improving enough to allow her to work for several years. (AR 55-56.) Moreover, because there is no objective, medical evidence from the relevant disability period showing an impairment that could reasonably be expected to produce plaintiff's alleged chronic pain, much less result in specific limitations, plaintiff has not established that the ALJ committed reversible error. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . .; there must be medical signs and findings, . . . which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged."); 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical

evidence."); *Jennifer F. v. Kijakazi*, No. 20 C 5365, 2022 WL 3043078, at *10 (N.D. Ill. Aug. 2, 2022) ("Complaints of pain alone are not enough to entitle plaintiff to disability benefits.").

Next, plaintiff criticizes the ALJ generally for relying on findings of the state agency consultants despite their not examining her, but this fact alone does not mean that their findings cannot serve as substantial evidence supporting the ALJ's decision. *See Pavlicek v. Saul*, 994 F.3d 777, 781, 783 (7th Cir. 2021) (affirming an ALJ who gave great weight to reviewing medical assessments); *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (same).

Finally, plaintiff's two, specific criticisms related to the consultants' opinions fare no better. *First*, she points out that Dr. Khordishi found at the initial level of review that plaintiff's impairments *could* reasonably be expected to produce her pain and other symptoms (AR 99), while Dr. Lipski found on reconsideration that plaintiff's impairment could *not* reasonably be expected to produce her symptoms (AR 108). This inconsistency does not make either opinion wholly unreliable. Rather, the ALJ properly considered both. Regardless, even though these consultants reached different conclusions as to the validity and significance of plaintiff's symptoms, *both* concluded that plaintiff had no severe impairment.

*Second*, plaintiff criticizes the consultants for incorrectly stating that plaintiff had a "PPD of the right head," which she argues resulted in improper consideration of her impairment at the initial and reconsideration levels of review. (AR 96-97, 105-06.) However, plaintiff herself points out that the local Social Security branch incorrectly noted in her file that she had a PPD of the "right head," so the state agency forms, including those completed by the state agency medical consultants, contained this incorrect information. (*See, e.g.*, AR 177.) More importantly, this typographical error had no effect on her claim for benefits because this PPD rating was assessed well before plaintiff's disability onset date. In any event,

8

the ALJ correctly noted and considered the actual PPD of the right foot, both at the hearing and in his written decision (AR 56, 80). *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[A]dministrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.").

### B.  Asthma

While the ALJ acknowledged that plaintiff sought treatment for the exacerbation of her asthma in September 2014, he noted that at the time, plaintiff had only mild wheezing with no rales or crackles and good air movement with symmetrical lung expansion.  (AR 56 (citing AR 878-80).)  Importantly, the ALJ also noted that plaintiff reported one month after this incident that she felt "completely fine" and no longer had shortness of breath, which was confirmed in a contemporaneous examination showing that plaintiff's lungs were negative for cough, wheezing, and shortness of breath.  (AR 885.)  Further, he noted that plaintiff's asthma was well-controlled with medications.  (AR 56 (citing AR 841-43).)

Nevertheless, plaintiff suggests that the ALJ "played doctor" with respect to her asthma by failing to consider it in relation to her other "body system listings."  Plaintiff fails to elaborate on this criticism, other than making seemingly unrelated references to her having rhinitis in 2014 and high blood pressure in 2011, 2014, and 2018, all when her asthma was in acute exacerbation.  (Dkt. #36 at 30-31.)  However, this evidence does not cast doubt on the ALJ's basic findings.  Not only did two of her blood pressure spikes occur outside the relevant disability period, but plaintiff points to nothing in the medical evidence that either these high blood pressure readings or any rhinitis episodes experienced in 2014 were significant enough

in duration and severity to support work restrictions, particularly considering that plaintiff's acute asthma symptoms had completely resolved by October 2014.

Plaintiff separately argues that her "medical records contain error, as the subjective statements recorded by the nurse include[] narratives [with] descriptive words that plaintiff disputes were made by her," as well as more broadly contain inaccuracies and contradictions. (Dkt. #36 at 30.) However, plaintiff neither indicates what specifically she believes was incorrectly recorded in the medical notes nor otherwise produces evidence establishing the notes inaccuracies. Thus, she has failed to show that the ALJ erred in considering, much less relying upon, those records.

### C. Anxiety

Finally, in his step two analysis, the ALJ analyzed the impact of plaintiff's anxiety, finding that plaintiff had no functional limitations in the four broad areas of mental functioning (AR 57-58) known as the "paragraph B criteria." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq., and § 404.1520a(c)(3). With respect to plaintiff's daily activities in particular, the ALJ noted that plaintiff could understand and remember how to perform her daily living activities and had sufficient concentration, persistence, focus, and self-management to perform them. *Id*. While plaintiff now faults the ALJ for not considering her physical limitations or the limiting effect that they had on her daily activities, the purpose of the B criteria is to determine the severity of a claimant's *mental* impairments, not physical impairments. 20 C.F.R. § 404.1520a(d). Thus, although plaintiff stresses that she had *physical* difficulties performing household chores and needed assistance from her family to complete those tasks (*see* function report, AR 187-98), these limitations are not relevant to the ALJ's findings as to paragraph B

criteria. Regardless, the ALJ acknowledged plaintiff's function report *and* her alleged difficulties performing daily activities in discussing the severity of her impairments, while still concluding that there was no medical evidence to support finding a severe impairment. (AR 55.)

### III. Duty to Develop the Record

This leaves plaintiff's criticism of the ALJ for not developing the record further before rendering his final opinion. While a social security claimant bears the burden of proving disability, an ALJ always has a duty to develop a full and fair record. 42 U.S.C. § 405(g); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). When a claimant appears without counsel, willingly or not, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Nelms*, 553 F.3d at 1098. More specifically, although plaintiff has to submit "some medical evidence" support her claim, the ALJ is "required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Id.* (citations omitted).

That said, "a significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). "And an omission is significant only if it is prejudicial." *Nelms*, 553 F.3d at 1098 (citation omitted). In other words, "'mere conjecture or speculation that additional evidence might have been obtained . . . is insufficient to warrant a remand.'" *Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020) (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)). Rather, "a clamant must set forth specific, relevant facts – such as medical evidence – that the ALJ did not consider." *Nelms*, 553 F.3d at 1098 (citations

11

omitted); *see also Kobs v. Saul*, No. 19-cv-571, 2020 WL 4364538, at *6 (E.D. Wis. July 30, 2020) (although an ALJ's duty to develop the record is heightened with an unrepresented claimant, a significant omission is usually required before the court faults an ALJ for failing to develop the record, and the decision of how much evidence to gather generally remains with the Commissioner) (citation omitted).

Instead, the plaintiff here, once again, merely criticizes the ALJ generally for breaching his duty to develop the record and suggests that the ALJ should have recontacted her physicians to resolve conflicts in the record and ordered an independent medical examination to determine her functional limitations. The regulations certainly give an ALJ the authority to recontact physicians and order further tests and examinations when the record before him contains incomplete or inconsistent information so as to preclude an informed disability decision. *Nugent v. Astrue*, No. 08 CV 2459, 2009 WL 3334917, at *10 (N.D. Ill. Oct. 14, 2009) (citing 20 C.F.R. § 404.1517 and § 404.1519b). However, the record in this case was neither confusing nor incomplete, and the ALJ had sufficient information from which to make his determination. *See* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."); § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."); § 404.1519b(c) ("We will not purchase a consultative examination . . . when your insured status expired in the past and there is no possibility of establishing an onset date prior to the date your insured status expired."); § 404.1520b (ALJ may recontact medical source if the evidence is incomplete or inconsistent).

Moreover, as plaintiff admits, there is a "dearth" of objective medical evidence for the time period under review. (Dkt. #36 at 37-38.) Indeed, plaintiff explains that she had only four appointments during that time, including an urgent care visit, a consultation with a new provider, and two follow-up appointments. *Id*. In other words, there was no missing or inconsistent evidence for the ALJ to develop or clarify. There was just insufficient evidence that plaintiff's various medical conditions were severe during the relevant period.

Regardless, plaintiff fails to point to any specific facts that were not brought out during the hearing, provided any new evidence material to her claim that the ALJ should have considered, or identified any conflicts that should have been resolved. *See Sherman v. Kijakazi*, No. 22-CV-3113, 2023 WL 5304650, at *6 (C.D. Ill. Aug. 17, 2023) ("A consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established."); *Dean v. Berryhill*, No. 1:16-cv-03340, 2017 WL 9730256 (S.D. Ind. Nov. 9, 2017) ("While an ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable, the ALJ need not solicit additional information if she simply finds the physician's opinion unsupported."). Accordingly, plaintiff has not met her burden of showing that recontacting her physicians or appointing an independent medical examiner would have made any difference in the ALJ's decision. *See Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020) (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in this case is insufficient to warrant a remand.").

In fairness, plaintiff does point to two, specific pieces of evidence that she believes were absent from the proceedings before the ALJ. *First,* plaintiff faults the ALJ for not posing any

13

hypothetical questions to the vocational expert ("VE") and not establishing at step five that there is no work in the national economy that plaintiff could perform. Given that the ALJ determined that plaintiff was not disabled at steps two and three, however, he did not need to engage in the analysis at steps four and five, and therefore, had no reason to hear testimony from the vocational expert to conclude that plaintiff was not disabled. *See* Social Security Ruling (SSR) 00-4P, 2000 WL 1898704, *2 (Dec. 4, 2000) (ALJs use VEs as sources of vocational evidence at steps four and five); *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020) (same) (citing *Biestek v. Berryhill*, 139 S.Ct. 1148, 1152 (2019); 20 C.F.R. § 404.1566(e)). In other words, because the ALJ found that plaintiff had no significant limitations during the relevant period, any vocational expert testimony would be irrelevant.

*Second,* plaintiff suggests that during the hearing she was prevented from presenting witness testimony from her husband, who, according to plaintiff, would have testified to the following regarding her condition:

- Plaintiff's right foot, knees, and hips cause her constant pain.
- Plaintiff has to sleep with heating pads and multiple ice bags and moves so much at night that she rarely gets more than three hours of sleep.
- Plaintiff needs to set multiple alarms and receive calls for appointment reminders and pays bills late or not at all because she does not remember to do so.
- Plaintiff shops only for essential items once a week because it is hard for her to walk on the concrete floors in the stores.
- Although plaintiff washes the dishes, they are never clean and have to be washed again.
- Plaintiff cannot carry the laundry up and down the stairs.
- Cleaning chemicals and dust cause plaintiff to have asthma attacks.
- Plaintiff does not socialize anymore because of her pain or fear of getting sick.
- Plaintiff's asthma, chronic pain, and/or migraines cause her to stay in bed for days at a time.

Unfortunately, plaintiff points to nothing in the record suggesting that the ALJ prevented *her* from submitting witness testimony or even knew plaintiff desired to do so. At

...

...

most, at the conclusion of the hearing, plaintiff asked the ALJ whether he was "going to call [her] husband? Were you going to need to do that?" and the ALJ said "No I don't think so." (AR 83-84.) In particular, plaintiff makes no representation that she actually requested or was denied the chance to introduce witness testimony. Moreover, there is no dispute that plaintiff received a notice that *she* could submit witness testimony during the hearing.

In any event, plaintiff's husband's proffered testimony mirrors her own and is not significant evidence as to whether plaintiff had a medically determinable impairment during the relevant period. Admittedly, the hearing here was only 24 minutes, but during that time, the ALJ received plaintiff's testimony, which detailed her relevant symptoms, including her pain, breathing and sleeping difficulties, and limited activities. (AR 77-81.) Regardless, this case plainly turned on the medical record already submitted, especially since any more recent development were outside the relevant periods. Thus, even assuming that the ALJ was obliged to take further steps to afford plaintiff's husband an opportunity to testify, plaintiff has not shown that any omission was significant given the lack of medical evidence supporting plaintiff's claimed disabling limitations. *See Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007) (finding that opinions of four lay witnesses were not competent to refute professional medical testimony and establish disability). Accordingly, plaintiff has not shown that the ALJ failed to develop or attempt to develop the record, much less that she was prejudiced by the ALJ's failure to supplement the record with more information about her condition between 2012 and 2014.

Because plaintiff has not shown that the ALJ's decision was unsupported by substantial evidence, she has failed to identify any reversible error in the ALJ's decision or handling of plaintiff's claim.

ORDER

IT IS ORDERED that:

1) Plaintiff Margaret Lechner's motion for new evidence (dkt. #49) and motion for summary judgment (dkt. #48) are DENIED.

2) The decision of defendant Martin O'Malley, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits is AFFIRMED.

3) The clerk's office is directed to enter judgment in defendant's favor and close this case.

Entered this 26th day of February, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge